Rose Schwartz, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Paul Manaster and Jeanette Manaster, Defendants-Appellees.

**Gen. No. 50,045.**

First District, First Division.

October 18, 1965.

Block & Levy and Alvin R. Becker, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Allen Hartman, Assistant Corporation Counsel, of counsel), for appellee, City of Chicago; Levin & Upton, of Chicago (Roland C. Upton and Henry H. Caldwell, of counsel), for appellee, Paul Manaster.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff Rose Schwartz appeals from a directed verdict at the close of all the testimony in favor of defendants, City of Chicago, and Paul and Jeanette Manaster. She had sued for personal injuries allegedly occasioned by the negligence of the City of Chicago in the maintenance and possession of a "defective driveway" and of the defendants, the Manasters, in the construction, maintenance and possession of a

driveway traversing a public sidewalk adjoining the gasoline station at the northwest corner of Cornelia and Halsted Streets, commonly known as 3500 N. Halsted Street in the City of Chicago.

Plaintiff, who was 64 years of age, resided at 806 West Roscoe Street, and on February 17, 1960 left home at approximately 8 a. m. to go to a friend's house at Addison and Pine Streets, as she had done many times before. As she left her house she noticed patches of ice on the ground in the area. She wore low heels and carried a purse as she proceeded on the west side of Halsted Street toward Cornelia Avenue, one block north of Roscoe. As she crossed Cornelia she noticed people "waiting for the bus, right near the bus stop." She went past the people. She said she then slipped on the ice and fell. When asked if she noticed anything unusual about the driveway she said "It was rough ice, rough and slanting." The driveway was slanting toward the Halsted Street side. She was taken to a hospital and given treatment. On cross-examination plaintiff did say she "just fell" when she got to the driveway. She remembered having at some time told one of the hospital personnel that she fell in the public street. Her attending physician stated that he had a notation in the medical history as of February 18, 1960 that she fell on the street.

Defendant, Paul Manaster, called by plaintiff as her witness, stated that in January and February of 1960 he was personally in charge of the gas station and the snow removal from the premises. Whenever snow fell he and his helper first removed the snow from the driveways and sidewalk and then cleared the station premises. They would pile the snow on the premises around the telephone booth and the oil curb signs and when they got over to the driveway would put the snow near the fence, as a rule. At the southeast corner of the station is a pole around which is

built a frame neon or electric sign and "we usually packed some snow around there well out of the way on our own property which does not interfere with pedestrians, does not interfere with the cars pulling in or out of the gas station." Regarding snow from the southeast driveway, he stated that they piled some of it around the signs "from one side of the driveway to the other side." If there was any ice they chipped it off with ice scrapers and if that didn't help, they put sand and salt on it. He did not recall the weather conditions or what he did to the driveways on February 16 or on the 17th (the day of the occurrence).

The driveway in question was originally constructed in 1938 by Manaster pursuant to a construction permit issued by the city. Some time in 1951, as part of an improvement program connected with the widening of Halsted Street, the city caused a new driveway to be constructed independently of any approval or consent of the Manasters. The proof indicated that the structural condition was the same at the trial as at the time of the occurrence and had been so since 1951. An engineer called by plaintiff testified that he measured the driveway in question and that there was a varying slope from the property line as the high point to the street curb—the low point. The driveway ran parallel to Halsted Street for about 38 feet. It was 6 feet wide from lot line to curb. Five feet north of the Cornelia sidewalk there was a vertical drop or slope of 6⅞ inches, 10 feet north of the Cornelia sidewalk, a slope of 7⅛ inches and 20 feet north of the Cornelia sidewalk, a slope of 6¾ inches.

Plaintiff, in her complaint, charged the city with having "wrongfully and negligently allowed a portion of the . . . sidewalk . . . to become and remain in a dangerously unsafe condition and repair, the surface of said public way being cracked, broken, depressed and covered with snow and ice and other debris." And

419

as an amendment to this charge she alleged that the city "wrongfully and negligently allowed or caused to be issued a permit for the construction of a certain driveway adjacent to the premises commonly referred to as 3500 North Halsted Street, Chicago, Illinois, contrary to the provisions of Section 858 of the Municipal Code of Chicago . . . ."

Plaintiff alleged that Paul Manaster maintained a driveway traversing a public sidewalk and connecting the place of business with the street; utilized the same as a means of ingress and egress for his customers and was under a duty to utilize it in such a manner that it did not become hazardous and unsafe for individuals using the sidewalk. She charged that he "wrongfully and negligently constructed it in such a negligent and improper manner that its surface was pitched and sloped to such an extent creating a hazardous condition for persons using the public sidewalk and . . . wrongfully and negligently failed to maintain the said driveway in such a negligent and improper manner it became cracked, broken, depressed and covered with snow and ice thus creating a hazardous condition. . . ." Plaintiff further alleged that Paul and Jeanette Manaster, as owners of the property, were similarly liable.* Although plaintiff says this is not a snow and ice case, she argues that this driveway, which the City possessed, especially when covered with patches of ice, created a hazardous condition to pedestrians which the City did nothing to correct. Since a duty is imposed by law to maintain all driveways abutting a public sidewalk, she contends it is reasonably inferable that the City knew or should have known of the dangerous condition as it has existed at least since 1951.

* Plaintiff does not refer to or make argument against Jeanette Manaster in the briefs and we assume as to her all trial orders are concluded.

Section 858 of the Code was the predecessor to the present Section 33–20 and among other things provided that:

No driveway shall be so constructed as to prevent free and unobstructed passage on, over or across the same, or in such a manner as to interfere with the proper drainage and safe grading of the streets. No driveway shall be constructed across intersecting sidewalks. Gradual approaches thereto shall be made from the grade of the driveway. *The slope of any driveway and the approaches thereto shall not exceed one inch vertical to one foot horizontal nor be less than ¼ inch vertical to one foot horizontal in any direction, except that the slope from street curb line shall not exceed one inch vertical to one foot horizontal* . . . . (Emphasis ours.)

Plaintiff here contends that sufficient facts were adduced as to the dangerous condition of the driveway requiring the court to submit the case to the jury.

■ The proof, according to the City, indicates that the closest plaintiff came to stating that the driveway was involved was when she said that she "just fell" when she got to the driveway. But the City says, assuming arguendo, that the driveway was involved, the excess of sloping of one inch through the entire 6 feet of the width of the sidewalk, or less than ³⁄₁₆ of an inch per one foot width * is patently de minimis and could not be the basis upon which to prove the City's negligence. Both plaintiff and the City rely on Arvidson v. City of Elmhurst, 11 Ill2d 601, 145 NE2d 105 (1957). Arvidson establishes (p 605): "The rule in

---

* Plaintiff was proceeding north 5 feet north of the Cornelia sidewalk; the driveway had a slope of 6⅞ inches for the six foot width. The ordinance prescribed a slope of 6 inches.

421

Illinois, reiterated in the case law, is that a jury question on the issue of the City's negligence is presented only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it." The court there found that the decisions reflect a conscientious attempt by the Illinois courts to apply this rule, and the determinations of the courts of other jurisdictions "cannot relieve this court of its duty to apply the rule promulgated in the Illinois case law to the facts in each case." (p 608)

 Plaintiff insists that because the slope of the driveway exceeded the maximum prescribed, a violation of an ordinance was proven thereby establishing a prima facie case for the jury. She seeks to invoke the rule that the violation of a statute or ordinance designed for the protection of human life or property is prima facie evidence of negligence. But this rule is only applicable when the cause of action comes within the purview of the particular statute or ordinance, and the injury has a direct and proximate connection with the violation. Dini v. Naiditch, 20 Ill2d 406, 417, 418, 170 NE2d 881 (1960). It has been held that a driveway across a sidewalk does not of itself establish that the sidewalk was in a condition unfit for public travel or that the municipality was negligent in its maintenance. Nor is it unusual. It has been said to be essential to the ordinary and common construction of ways for public travel and is not a defect per se. Storen v. City of Chicago, 373 Ill 530, 535, 27 NE2d 53 (1940); Calhoun v. Corning, 328 Ill App 493, 495, 66 NE2d 303 (1946).

 Taking all of the evidence adduced in the trial with all its intendments most favorable to the plaintiff and applying the above principles, we conclude that the trial court did not err when it directed the verdict for the defendant City of Chicago. Plain-

422

tiff did not seek to create or prove liability against the municipality because of snow or ice on the public way. There was no proof that the driveway was defective because of its slope or that the differential between the ordinance provision and its actual construction created such a condition that a reasonably prudent man would anticipate some danger to persons using it. Furthermore, there was no evidence that the driveway's slope was the proximate cause of plaintiff's injury. She said she slipped on the ice. Plaintiff's theory of recovery in which she combined the icy condition, for which it was impliedly admitted the City was not liable, together with the slope of the driveway which was not proven to be the proximate cause, in our judgment did not create an independent liability on the municipality. Regarding the defendant Manaster, plaintiff charges that "by allowing the driveway in question which abutted the public sidewalk to be used for his extraordinary business purpose a duty devolved upon him to exercise due care and caution in the maintenance and upkeep of the driveway so as not to injure pedestrians." Plaintiff argues that Manaster used the driveway over which pedestrians had to walk and which sloped in excess of the ordinance requirement; that the risk was magnified by the accumulation of patches of ice on the driveway; that the evidence disclosed he caused snow and ice to be piled upon the southeast corner of his lot and adjacent to the crest of the driveway; "that he knew or should have known that the natural processes of thawing and freezing would cause this accumulation to flow on to the driveway and increase the hazard to pedestrians thereon." The evidence indicated that Manaster removed snow from the driveway and sidewalk and stacked or piled it on the premises so as not to interfere with the movement of pedestrians or vehicles. Plaintiff did not prove any accumulation of ice, which accumulation

423

could be traced to any unnatural cause, or to any negligent act of Manaster. There was no evidence that the snow Manaster removed and piled on his premises in any way created an unnatural or unusual condition. In Riccitelli v. Sternfeld, 1 Ill2d 133, 115 NE2d 288 (1953), defendant, a gas station operator, and his helper, after heavy snowfalls, dug out the driveways and then shoveled a path through the snow on the walks, banking the snow on each side of the walk with resulting piles of snow on each side of the path to a height of two or three feet. Snow shoveled from the driveways was also added to these banks of snow at the mouths of the driveways. There had been heavy snowfalls and alternate periods of freezing and thawing. The plaintiff walking along one of these paths slipped and fell suffering injuries for which she sued. The Supreme Court in affirming the Appellate Court's holding that plaintiff could not recover, said (p 137):

> As the Appellate Court so capably stated in its opinion [349 Ill App 63]: "The general assumption is that the industry displayed by citizens removing snow after a snowfall is desirable, if not necessary. The water which froze and produced the lump of ice on which plaintiff fell, came from natural causes. It cannot be said to have arisen from anything defendant did, other than removing the snow obstructing his driveway and making a path on the sidewalk for pedestrians. That in so doing he may have piled some snow from the driveway onto the piles banked along the walk is not the type of act upon which liability in a case of this character may be predicated." With this statement we agree.

The pronouncement in Riccitelli is equally applicable to and determinative of the activities of Manaster regarding the snow removal and the alleged liability at-

tached thereto. Plaintiff's attempt to hold him liable for the condition and maintenance of the driveway, although the evidence disclosed that he had no hand in its construction, is equally disposed of by the reasons expressed herein holding the City not liable. The trial court did not err in directing a verdict in Manaster's favor. The judgment orders of that court are therefore affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.