MONICA McCANN, Plaintiff-Appellant, *v.* BETHESDA HOSPITAL *et al.*, Defendants-Appellees.

First District (1st Division)    No. 78-1221

Opinion filed December 28, 1979.—Modified on denial of rehearing February 4, 1980.

Burton I. Weinstein, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (William P. Door, Hugh C. Griffin, and Marsha Klevickis, of counsel), for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County denying the plaintiff's motion to vacate the summary judgment entered on March 22, 1978, in favor of defendants, Bethesda Hospital (hereinafter Bethesda) and John Mertes. On appeal the plaintiff contends that the trial

court erred in granting the defendants a summary judgment pursuant to Section 57 of the Civil Practice Act. Ill. Rev. Stat. 1977, ch. 110, par. 57.

We reverse.

This suit originates from a fall suffered by the plaintiff, Monica McCann, on December 7, 1972, at a parking lot adjacent to Bethesda Hospital in Chicago. The plaintiff and her husband parked at the lot while visiting a friend who was a patient at the hospital. The accident occurred, when the plaintiff, upon leaving the hospital and returning to her car, slipped and fell near the passenger door of her car. The plaintiff fractured her hip in the fall. The plaintiff testified at her deposition that she did not see what caused her fall, but that her husband told her that he discovered ice at the spot where she fell.

The weather at the time of the accident was cold and damp. The weather report for the week of the accident reveals that there was only a trace of snow on the day of the accident, but, that during the week prior to the accident 3.3 inches of snow fell, with .8 inches of snow reported on the day before the accident, December 6, 1972. During the week before the accident, the temperature fluctuated so that the temperature rose to 51 degrees early in the week and then fell below zero. According to the plaintiff's deposition, there was snow on the ground on the day of the accident and the streets were wet. Defendant Mertes testified in his deposition that the parking lot was icy on the day before the accident but the plaintiff stated that her husband had no difficulty in pulling into the parking lot because of slipperiness.

The parking lot, located east and adjacent to the hospital, sloped from west to east. According to Richard Mann, the architect who examined the parking lot, the pitch of this slope was in excess of 7% at its western end. This pitch allowed no water to accumulate at the western end of the lot. At the point of the plaintiff's fall, however, the parking lot was much more level which allowed water runoff to accumulate and freeze.

The record indicates that the hospital employed the defendant John Mertes to plow the hospital parking lot. Mertes stated in his deposition that when he plowed the Bethesda parking lot it was his practice to pile the snow wherever he could but that he primarily placed it at the south end of the lot. Mertes' records reveal no bill for plowing on the day of the accident, but do indicate that plowing services were billed for the day prior to the accident. In his deposition Mertes stated that he did not plow on this date, however, because it was too icy, but that he did submit a bill to cover his travel time. The plaintiff stated in her deposition that on the date of the accident she observed that snow was pushed across the lot and accumulated on a curb running north and south through the lot.

The plaintiff filed a complaint seeking damages for the injuries that

she suffered in the fall. The complaint charged Bethesda and Mertes with negligence in improperly operating and maintaining the parking lot, failing to inspect the lot, and failing to warn the users of the lot of its dangerous and icy condition. The hospital answered, denying that they had any knowledge of the ownership or control of the parking lot and specifically denying that they committed any of the negligent acts alleged in the complaint. It should be noted that, at oral argument, counsel for the hospital admitted that no question was raised as to the ownership of the lot by the hospital.

After the depositions of the plaintiff and defendant Mertes were taken, the defendants filed a motion for summary judgment on the basis that the record revealed that the ice upon which the plaintiff fell was a natural accumulation and that in Illinois a landowner is not liable for injuries caused to an invitee from natural accumulations of snow or ice found on his property. The defendants' motion was supported by the following facts: (1) snow fall and freezing weather on the day of the accident and on the day before the accident; (2) the plaintiff's admission that the only snow that she saw in the parking lot was a natural accumulation on a curb; and (3) the affidavit and deposition of Mertes stating that he did not plow the parking lot at Bethesda for several days prior to the accident.

It appears from the record that the trial court granted the defendants' motion for summary judgment before the plaintiff filed a brief in opposition to the motion on a record consisting of pleadings, the deposition of the plaintiff, the deposition and affidavit of the defendant, John Mertes, and a copy of the official Chicago weather report issued for the month of December 1972 by the United States Department of Commerce. The plaintiff subsequently filed her brief, an architectural survey of the Bethesda parking lot and surrounding buildings, an affidavit by John Mann, the architect who examined the parking lot, a copy of a statement submitted by Mertes to the hospital for plowing on December 6, 1972, the day prior to the accident, and an excerpt from the Mertes deposition in seeking to vacate the summary judgment. When the trial court denied the plaintiff's motion to vacate, she brought the present appeal.

■■ It is well established that a dismissal at a preliminary stage of a proceeding is a drastic action and therefore summary judgments should be granted with caution. (*Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357; *Solone v. Reck* (1961), 32 Ill. App. 2d 308, 177 N.E.2d 879.) A summary judgment will be entered in favor of the moving party only where the pleadings, depositions, affidavits, and other documents demonstrate that no genuine issue of fact exists which warrants trying the case. (Ill. Rev. Stat. 1977, ch. 110, par. 57;

*In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 386 N.E.2d 862; *Hernandez v. Trimarc Corp.* (1976), 38 Ill. App. 3d 1004, 350 N.E.2d 202.) Moreover, trial courts construe the record strictly against the moving party and liberally in favor of the opponent of the motion. *Killeen v. Dunteman Co.* (1979), 78 Ill. App. 3d 473, 397 N.E.2d 436; *Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.

■■ A landowner is under a duty to an invitee to exercise ordinary care in the use and maintenance of his property (*Dunlop v. Marshall Field & Co.* (1975), 27 Ill. App. 3d 628, 327 N.E.2d 16), but a landowner has no duty and is consequently not liable for injuries sustained as a result of the presence of naturally accumulated snow or ice. (*Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133, 115 N.E.2d 288; *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449; *DeMario v. Sears Roebuck & Co.* (1972), 6 Ill. App. 3d 46, 284 N.E.2d 330.) Liability is imposed, however, where a plaintiff shows that an injury occurred as the result of snow or ice "produced or accumulated by artificial causes or in an unnatural way or by defendant's own use of the area concerned and creation of the condition * * *." *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318, 173 N.E.2d 534; accord, *Foster v. George J. Cyrus & Co.* (1971), 2 Ill. App. 3d 274, 276 N.E.2d 38; *Stroyeck v. A. E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 167 N.E.2d 689.

The plaintiff does not contest the general law in this area. Rather, it is the plaintiff's theory that an unnatural accumulation of ice existed at the spot where the plaintiff fell caused either by (1) negligent plowing of the parking lot by Mertes on December 6, 1972, or (2) by the slope of the parking lot which allowed runoff water to form unnatural accumulations and freeze. The plaintiff points to *Fitzsimons v. National Tea Co.* and *Foster v. George J. Cyrus & Co.* to show that the negligent plowing of a parking lot may cause an unnatural accumulation of ice. In *Fitzsimons*, the court held that an unnatural accumulation existed where snow was placed away from the parking lot's drains at a position where the snow could melt and refreeze, while in *Foster* liability was based on the fact that the defendant's plowing of ice and snow up against the plaintiff's car created an unnatural accumulation. The plaintiff argues that as the record reveals an issue of fact concerning whether the parking lot had been plowed shortly before the accident, this issue should have been submitted to the jury. (*Foster v. George J. Cyrus & Co.*) This argument ignores that a summary judgment may be granted where an issue of fact is raised if the trial court, when viewing the evidence in the light most favorable to the plaintiff, concludes that no liability exists as a matter of law. *E.g., Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359.

■■■ We think that the trial court in the present case could determine as a

matter of law that the plaintiff failed to show that an unnatural condition or accumulation of snow or ice resulted from the alleged plowing of the Bethesda parking lot. A plaintiff must make an affirmative showing of an unnatural accumulation or an aggravation of a natural condition before recovery will be allowed. (*Byrne v. Catholic Bishop* (1971), 131 Ill. App. 2d 356, 266 N.E.2d 708.) The plaintiff's deposition indicates that, while she didn't examine the entire parking lot on the occasion of her fall, she only noticed an accumulation of snow on a curb to the east of where the car was parked. Even had this snow been a part of a large snow bank left by defendant Mertes' plowing of the lot which melted and refroze under facts similar to those found in *Fitzsimons*, the ice on which plaintiff fell would not have been formed because water draining from the curb would flow east while the spot where the plaintiff fell was west of the curb. (*Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449.) Moreover, the plaintiff failed to present evidence of any snow or ice packed up against the car which could have supported liability under *Foster* or *Sims v. Block* (1968), 94 Ill. App. 2d 215, 236 N.E.2d 572. Rather, the plaintiff's testimony suggests that the ice upon which the plaintiff fell occurred as the result of clearing or plowing snow from the parking lot which had ice beneath it. Illinois law is quite clear that liability does not arise under such a circumstance. (*Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 307 N.E.2d 449; *DeMario v. Sears Roebuck & Co.* (1972), 6 Ill. App. 3d 46, 284 N.E.2d 330; *Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55, 241 N.E.2d 222.) Nor may it be based on the failure of a landowner to check for an unnatural accumulation of snow or ice after clearing a sidewalk or parking lot. *Bakeman v. Sears, Roebuck & Co.; DeMario v. Sears Roebuck & Co.*

■■ We turn next to the plaintiff's contention that evidence of the dangerous nature of the slope of the parking lot raised an issue of fact concerning whether the ice upon which the plaintiff fell was a natural or unnatural accumulation. We have reviewed a number of cases in which a plaintiff has alleged that an unnatural accumulation of ice existed as the result of a sloping surface, including the following recent cases: *Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 375 N.E.2d 180; *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359; *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 289 N.E.2d 250; *Schwartz v. City of Chicago* (1965), 63 Ill. App. 2d 416, 211 N.E.2d 477; *Stroyeck v. A. E. Staley Manufacturing Co.* (1960), 26 Ill. App. 2d 76, 167 N.E.2d 689. These cases hold that, in order to find that the design of a sloping surface created an unnatural accumulation of ice, a plaintiff must present evidence of the dangerous nature of the slope, that the slope was the proximate cause of the plaintiff's injuries and that the landowner had notice of the defect.

(*Sepesy v. Fuller; Stroyeck v. A. E. Staley Manufacturing Co.*) Where such evidence has been produced, the issue of whether the slope was a dangerous condition which created an unnatural accumulation of ice is a question of fact for the jury. (*Davis v. City of Chicago.*) As the court explained in *Davis*:

> "Frequently, sidewalks are constructed with a slight grade to permit drainage and to allow the area to remain in a safe condition for pedestrian traffic. There is no mathematically precise formula which can be used to determine a reasonable slope from one that may be hazardous under certain conditions. To attempt to impose such a standard would be unwise, since each case must be determined on its particular facts." 8 Ill. App. 3d 94, 97.

The defendants argue that *Greenwood v. Leu* requires this court to affirm the summary judgment. We do not agree. In *Greenwood*, snow fell prior to the occurrence and the only visible snow was a natural accumulation with ice beneath it. The plaintiff slipped and injured himself at the inclined entranceway of the defendant's store where he had gone to buy some cigarettes. The trial court granted the defendant's motion for summary judgment. The appellate court affirmed stating that as:

> "* * * there was no evidence that the sloping entranceway had anything to do with his fall, it is our conclusion that the incline of the entranceway did not present such a question of fact so as to preclude a summary judgment." (14 Ill. App. 3d 11, 17.)

In the present case, however, the plaintiff presented the affidavit of Richard Mann, a licensed architect of almost 15 years, who concluded that the incline of the parking lot was excessive and would have caused an unnatural accumulation of ice at the site where the plaintiff fell. Mann's conclusions were based on his examination of a survey of the hospital parking lot and adjacent buildings, his own personal examination of the site and an examination of the weather report for the time of the accident. He specifically noted in the affidavit that:

> "7. The change in elevations, as depicted in the survey, from the steep pitch to the relatively level area, would cause an unnatural accumulation of water, or a runoff of melting snow in times of alternate thawing and freezing.
>
> 8. During my physical inspection I observed the above described pitch. In addition, the inspection revealed in the area where the fall took place, a significant "puddling-up" of accumulated water from the prior evening and early morning rain. There was some other "puddling-up" in the lot, but for the most part, 95 to 97 per cent of the lot was dry."

Moreoever, the incline of the parking lot in this case was in excess of seven percent (seven-foot vertical drop or change in elevation for every

100 running foot) which is far greater than that found insignificant in *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 289 N.E.2d 250 (five inches per 51 inches) and *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359 (two inches per 54 inches). In light of these cases and the evidence introduced by the plaintiff that the slope of the parking lot did have something to do with the plaintiff's fall, it is our conclusion that the evidence concerning the slope of the parking lot presents a question of fact concerning whether the ice causing the fall was an unnatural accumulation. We therefore find that the summary judgment should not have been entered.

For the aforesaid reasons the order of the trial court denying the plaintiff's motion to vacate the summary judgment is reversed and the cause remanded in accordance with the views expressed herein.

Judgment reversed and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE CAMPBELL delivered the opinion of the court:
Upon detailed consideration of the petition for rehearing filed by the defendants, Bethesda Hospital and John Mertes, we find that our original opinion must be modified in the following respect. We find that the plaintiff failed to show, as a matter of law, that an unnatural condition or accumulation of snow or ice resulted from the alleged plowing of the Bethesda parking lot by John Mertes. Therefore, the order of the trial court in dismissing count II, which specifically alleged the negligence of Mertes in plowing the lot, should be affirmed. The judgment of the trial court insofar as defendant Mertes is affirmed; but the judgment as to defendant Bethesda Hospital is reversed and remanded consistent with the reasoning contained in our original opinion.

The petition for rehearing is accordingly denied.

GOLDBERG, P. J., and O'CONNOR, J., concur.