STELLA HOISETH, Plaintiff-Appellant, v. NORTHEAST ILLINOIS RE-
GIONAL COMMUTER RAILROAD CORPORATION, Defendant-Appellee
(National Railroad Passenger Corporation, Third-Party Defendant).

First District (6th Division)   No. 1—89—2039

Opinion filed October 12, 1990.

Senechalle & Murray, P.C., of Arlington Heights (Robert E. Senechalle
and Stephen R. Murray, of counsel), for appellant.

Michael Schneiderman and Sue-Ann Rosen, both of Northeast Illinois
Regional Commuter Railroad Corporation, of Chicago, for appellee North-
east Illinois Regional Commuter Railroad Corporation.

Lord, Bissell & Brook, of Chicago (Mary Pat DeChant and Hugh G. Griffin, of counsel), for appellee National Railroad Passenger Corporation.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Stella Hoiseth, appeals from an order granting summary judgment to the defendant, Northeast Illinois Regional Commuter Railroad Corporation (Metra), in the plaintiff's personal injury action. The plaintiff contends that the defendant's motion failed to establish facts sufficient to entitle the defendant to judgment as a matter of law.

On November 28, 1983, the plaintiff was injured at a railroad platform while waiting to board a commuter train. In her complaint filed on November 26, 1985, she alleged that the defendant breached its duty of care to the plaintiff. Specifically she alleged in paragraph 5 of her complaint that the defendant committed the following negligent acts:

"(a) provided an unsafe waiting area for its passengers *** waiting to board commuter trains;

(b) allowed the far north end of its *** platform to slope in such a manner as to render the platform unsafe for passengers to stand when passed by a fast moving train;

(c) failed to warn its waiting passengers of the unsafe condition ***;

(d) failed to properly maintain and supervise its tracks and the use thereof at or near the *** Station;

(e) failed to take necessary action to require other carriers using [its] tracks near the *** Station to exercise due care and caution so as to avoid injuring Defendant's passengers waiting at the *** Station; [and]

(f) allowed the National Railroad Passenger Corporation *** to operate a passenger train on Defendant's tracks and through the *** Station at an excessive rate of speed and without warning of its approach."

Metra subsequently established that it did not own or maintain the tracks in question and that the tracks were owned and maintained by National Railroad Passenger Corporation (Amtrak) against whom Metra filed a third-party complaint. The plaintiff now agrees that summary judgment was properly entered for Metra on those allegations of the complaint that Metra owned and operated the railroad tracks involved. Thus, the entire basis of the plaintiff's claim is reduced to the condition of the platform, that is, the fact that the platform sloped. The issue, therefore, is whether the evidence presented

by both sides on the motion for summary judgment was such that if it were all the evidence introduced at trial, the judge would have been required to direct a verdict in favor of the defendant.

■ As a preliminary matter, it is necessary to ascertain what evidence is properly before us. The defendant attached portions of the plaintiff's deposition to the motion for summary judgment. In her response, the plaintiff attached her affidavit, other portions of her deposition, a photograph of the defendant's platform, a report made by paramedics of the Chicago fire department and a report by employees of the defendant. Both reports purported to establish statements made by the plaintiff shortly after the accident. The defendant moved to strike the photograph, the reports and the plaintiff's affidavit. The defendant contended that the photograph and reports "were irrelevant, [there had] been no proper foundation presented, they [contained] hearsay, and [were otherwise] unreliable 'evidence'." The defendant also contended that the plaintiff's affidavit directly contradicted judicial admissions which the plaintiff had allegedly made in her deposition. There is no order specifically passing on the motion to strike, but the judge's order granting summary judgment recited that the "documents attached to plaintiff's response are unauthenticated and not considered." In summarizing the reasons for his ruling, the judge said that he would not consider the reports. We interpret the judge's order and remarks to be a granting of the motion to strike the reports but a denial of the motion to strike the plaintiff's affidavit. The affidavit established the foundation proof for the photograph which was also part of the plaintiff's deposition which was relied on by both parties in the motion for summary judgment. Consequently, we judge that the record before us consists of the pleadings, the deposition of the plaintiff, the photograph and the plaintiff's affidavit.

In this court, the defendant argues that we should not consider the plaintiff's affidavit since it contradicts statements made by the plaintiff in her deposition. The defendant maintains that under the "judicial admission" rule the plaintiff is barred from contradicting statements she made in her deposition by any subsequent proof. See *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 508 N.E.2d 301.

The pertinent parts of the plaintiff's deposition are as follows:

"Q. What were you standing on *** while you were waiting for your train?
***
A. I think it was a concrete floor. There was some gravel I think around but I think where I was standing it was cement.

***

Q. Was there a slope to this concrete platform?

A. No, it was flat.

* * *

Q. Do you know exactly what caused you to fall?

A. I have no idea except that there is vibration from the fast train because how would I go. I didn't walk from that place waiting for the train to where I woke up.

Q. No. I'm just asking you from your recollection do you remember what caused you to fall?

A. I have no idea at all. I am sorry, I was completely out, I don't know.

* * *

Q. Do you recall anything unsafe about the platform itself?

A. I don't know. I can't say, I don't know.

***

Q. Do you recall any debris on the platform?

A. No, I don't remember seeing that.

Q. Do you recall anything unusual about the platform?

A. No.

***

Q. Is there anything about the platform that caused your fall?

A. I couldn't say. I don't think it has anything to do with the platform. I just think the train was going too fast. That might be my own opinion but what else could blow me from one place to another like that and knock me out.

* * *

Q. Well, you keep saying that you were blown and—

A. I said the vibration. But what I mean is I couldn't tell you exactly because I was standing there feeling fine and then I woke up on another track and I don't know how long after or anything."

Those parts of her deposition were relied upon by the defendant in its motion for summary judgment. In response to the motion, the plaintiff submitted her own affidavit in which she admitted that she had testified at her deposition that the platform was concrete and flat but, based on her review of the photograph of the platform, she said the platform had a brick floor and sloped where she had been standing at the time of the accident. She also said that she was "standing on the platform behind the line when the fast moving train came through without warning *** [and she] felt the vibration of the train

and the force created by the train knocked [her] off [her] feet and onto the tracks behind the platform." She said that, despite her memory lapses she did know what happened and she "remember[ed] the force created by the train which knocked her off her feet."

The plaintiff, it should be pointed out, was 80 years old at the time her deposition was taken. The deposition itself reflects confusion and an inability to remember on her part. We have doubts that the defendant has established the requirement of the "judicial-admission" rule in this case for a number of reasons. But we need not decide whether the plaintiff's affidavit has run afoul of the rule because we have concluded that the order granting summary judgment should be affirmed despite acceptance of the plaintiff's affidavit. As we have previously noted, the plaintiff's entire claim rests on the allegation of her complaint that the defendant allowed the "platform to slope in such a manner as to render the platform unsafe for passengers to stand when passed by a fast moving train." That allegation, of itself, is conclusional. The question then becomes whether the plaintiff has submitted proof to support the allegation that the platform sloped in such a manner as to make the platform unsafe. We conclude that she has not. We agree with the trial judge's finding that the plaintiff's characterization of the slope as "dangerous" was insufficient to raise a triable issue of fact.

A number of cases involve claims that the slope of a surface upon which the plaintiff was injured contributed to the injury. In *Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 525 N.E.2d 1127, the plaintiff was injured when she slipped on ice and snow in a parking lot. The plaintiff's expert stated in an affidavit that the parking lot was pitched toward the center of the lot and that if snow were plowed in the manner the defendant had plowed it, alternate periods of freezing and thawing would cause water run-off and result in flat sheets of ice forming in the area where the plaintiff had fallen. Thus, the plaintiff argued, the excessive slope of the parking lot resulting in an unnatural accumulation of ice was a cause of the injury. The appellate court affirmed summary judgment for the defendant, holding that the affidavit of the expert that the lot was pitched downward was insufficient. The court also held insufficient a subsequent affidavit of the expert that there was a 4.5-inch drop over a 65.3-foot length from one corner of the parking lot and a 3.5-inch drop over a 44.3-foot length from one of the entrances of the lot.

In *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 289 N.E.2d 250, the plaintiff was injured when she slipped on a sidewalk upon which snow had fallen. The sidewalk sloped 5.7 degrees. The appellate

court reversed judgment for the plaintiff, holding as follows:

"Frequently, sidewalks are constructed with a slight grade to permit drainage and to allow the area to remain in a safe condition for pedestrian traffic. There is no mathematically precise formula which can be used to determine a reasonable slope from one that may be hazardous under certain conditions. To attempt to impose such a standard would be unwise, since each case must be determined on its particular facts. However, it is our conclusion that the incline of the sidewalk in the present case was not inherently hazardous and was so slight as not to impose a duty upon the City to have corrected it." 8 Ill. App. 3d at 97.

Other cases holding that the evidence of the slope of the surface upon which the plaintiff was injured was legally insufficient include *Greenwood v. Leu's IGA Food Liner* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359, *Schwartz v. City of Chicago* (1965), 63 Ill. App. 2d 416, 211 N.E.2d 477, and *Cogdill v. City of Marion* (1959), 22 Ill. App. 2d 99, 159 N.E.2d 28.

For comparison purposes we refer to *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 400 N.E.2d 16. In *McCann*, the appellate court reversed summary judgment in behalf of the defendant and distinguished the cases cited by the defendant, which included *Greenwood v. Leu, Davis v. City of Chicago* and *Schwartz v. City of Chicago*, because the plaintiff presented the affidavit of a licensed architect *who concluded that the incline of the parking lot was excessive and would have caused an unnatural accumulation of ice* at the site were the plaintiff fell. In this case, the plaintiff offered no evidence as to the grade of the slope, let alone expert testimony that the slope was unreasonable and dangerous. The photograph of the platform was introduced to establish that the plaintiff was standing on a slope of the platform at the time the train passed. It is not clear to us that the spot in the photograph marked by the plaintiff to indicate where she was standing is, in fact, on the sloped area of the platform. If it is, it is at the top of the slope. The slope appears slight and was obviously designed for drainage purposes. We conclude that the plaintiff, as a matter of law, has failed to establish that the slope of the platform was unreasonable and dangerous.

In order to support a judgment for a plaintiff based on the design of a sloping surface, a plaintiff must present evidence of the dangerous nature of the slope, that the slope was the proximate cause of the plaintiff's injuries and that the land owner had notice of the defect. (*McCann*, 80 Ill. App. 3d at 549.) Since we conclude that the

plaintiff has failed to present any evidence establishing the dangerous nature of the slope of the platform, it is unnecessary for us to consider the other contentions of the defendant, including the argument that the plaintiff failed to prove that the slope was the proximate cause of the plaintiff's injury.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and RAKOWSKI, J., concur.