KEVIN TAYLOR et al., Appellants, v BANKERS TRUST COMPANY et al., Respondents.

BANKERS TRUST COMPANY, Third-Party Plaintiff-Respondent, v BANK OF MONTREAL et al., Third-Party Defendants-Respondents.

First Department, May 28, 1981

#### APPEARANCES OF COUNSEL

*Joel H. Bernstein* of counsel *(Kantor, Serota, Hantgan & Bernstein,* attorneys), for appellants.

*Amy K. Jacobson* of counsel *(F. V. Mina* with her on the brief and attorney), for Bankers Trust Company, respondent.

#### OPINION OF THE COURT

FEIN, J.

Plaintiffs appeal from a judgment, Supreme Court, New York County (CAHN, J.), entered June 17, 1980, in favor

of defendant Bankers Trust Company (Bankers) notwithstanding the jury verdict in favor of plaintiff on the issue of liability only. Plaintiff Kevin Taylor (Taylor), an employee of the Chase Manhattan Bank, was walking along Wall Street at about noon of January 24, 1977, in front of and on the same side of the street as the Bankers building was located, cornering Wall and Nassau Streets. As Taylor was walking westbound he felt a blow on the back of his head; his vision temporarily blurred and someone grabbed him. A passerby, Patrick Donovan, who helped Taylor, told him that he had been hit by a piece of ice. The chunk of ice, larger than a grapefruit, was then lying at Taylor's feet. He picked it up and entered the Bankers building and reported the occurrence. After treatment, and filling out some forms, Taylor and Lyons (the building manager) went out into the street and observed that there was ice accumulated on the fifth floor ledge of the building, from which water was dripping.

In his complaint Taylor alleged that the overhanging ledge of the building permitting the accumulation of snow and ice during the winter constituted a nuisance and that the defendant Bankers was negligent in maintaining the building in that condition. The case was tried on the issue of liability only. In setting aside the jury verdict in favor of the plaintiffs and granting judgment to Bankers notwithstanding the verdict, the Trial Judge ruled that as a matter of law Bankers had no notice in that there was no proof of prior incidents in which ice had fallen from the ledge, which proof the court found requisite as a foundation for liability, citing *Klepper v Seymour House Corp.* (246 NY 85). The court concluded that *Klepper* requires that there be actual notice of prior incidents of the falling of snow and ice from the building before the abutting landowner may be held liable to sidewalk pedestrians injured by such fall of snow and ice.

The testimony of Taylor and Donovan on the trial did not state that either saw where the falling chunk of ice came from. However, Stanley H. Goldstein, a professional engineer engaged in designing buildings, including tall buildings in large metropolitan areas, called as an expert on

behalf of the plaintiffs, testified that in his opinion the chunk of ice which fell on Taylor came from the Bankers building. It is undisputed that the Bankers building takes up a large portion of the block and the only other building on the block is that of the Bank of Montreal and Bank of Montreal Trust Company whose motion to dismiss the amended complaint and third-party complaint was granted at the end of plaintiffs' case. There was no proof that ice had fallen from that building, the proof being that the injury was sustained while Taylor was in front of the Bankers building.

Seizing upon the fact that there was no testimony regarding prior incidents in which ice or snow fell from the building and injured passersby, the defendant urged and the trial court found that such evidence was essential as a foundation for liability. It is also argued on this appeal in support of the trial court's ruling that there was no proof that the building design created a nuisance in that it allowed ice and snow to accumulate on the ledge and to fall to the ground and no proof of custom in the industry to remove snow and ice from building ledges. It is contended that such proof is essential to a prima facie case. It is also argued on appeal that the expert's testimony and other evidence was insufficient to support a finding that the ice fell from defendant's building, although on the trial defendant practically conceded that the ice fell from its building.

It is undisputed that the last time snow fell was on January 16, eight days before the accident when only six tenths of an inch fell. There had been two-tenths of an inch on January 15 and five inches on January 14. It is clear that there was no snow, sleet, rain or other precipitation from January 16 to January 24 and that any accumulation of snow and ice was not recent but would have had to come from precipitation of snow, sleet or rain which fell eight or more days prior to the accident. The official weather report noted that there was still two inches of snow and ice at the Central Park Observatory on the morning of the accident. The expert stated as a scientific principle that because the ground retains more heat than building materials, the accumulation on the ledges of defendant Bankers building must have been greater than at Central Park.

Immediately after being struck, Taylor noted people cringing against the wall of defendant Bankers building. The chunk of ice which struck Taylor was the size of a grapefruit and weighed just under six pounds. Other smaller pieces of ice were splattered on the sidewalk in the area where he was hit.

Bankers building has four ledges overhanging the sidewalk of Wall Street along the entire length of the building. The fifth floor ledge overhangs the sidewalk by three and one-half to four feet, and is characterized by sculpted animal heads. After the accident, Taylor pointed out to Bankers manager that there was water and ice dripping and hanging from the fifth floor ledge of Bankers building.

The expert's opinion as to how the accident occurred was based upon facts disclosed in the weather report such as sunlight, temperature, wind, precipitation, humidity and other evidence. He personally examined the building and viewed diagrams, photographs, reports and other documents in evidence. He stated that he applied the laws of physics, chemistry, science and nature, including Newton's laws, in coming to his conclusion. He concluded that ice existed on the ledge from January 16, 1977, the last day of the last snowfall prior to the occurrence, eight days prior to the accident. He pointed out the familiar principle that falling objects generally fall straight down and that snow and ice accumulate on exposed surfaces, even those with drains and angles. He concluded that the piece of ice came from defendant's fifth floor ledge on which snow and ice had accumulated for approximately 10 days before the accident.

The trial court properly charged the jury as to actual and constructive notice and submitted the case to the jury on the theory of negligence. However, in setting aside the verdict, the trial court concluded that for liability to ensue there must be proof of similar incidents of falling snow and ice prior to the accident complained of, relying on Klepper (supra).

In my view the trial court misread Klepper (supra). In that case, snow and ice had been allowed to accumulate on a sloping cornice which extended out over the street for 16

to 20 inches at an angle of 50 degrees. There was proof that after heavy storms snow and ice accumulated on the cornice and slid off onto the sidewalk in masses of varying sizes and weights every winter, including three or four times previously during the very winter in which plaintiff in that case was injured.

The *Klepper* court first inquired whether liability could be founded on the theory of nuisance, the creation and maintenance of a manifestly dangerous condition. In this context it discussed the slope of defendant's roof, the extension of the cornice over the street and the history of prior similar occurrences. Noting the frequent overlap between nuisance and negligence, the court concluded that liability for negligence was demonstrated.

The court held that the historic evidence was sufficient to charge the owner with notice of a dangerous condition, importing negligence. However, nowhere in the court's opinion is it stated or suggested that this is the only form of notice required or that notice of such actual happenings is requisite to establish negligence. The law is clear that in order to establish liability for negligence there must be proof of a duty, its breach, and notice of the condition which causes the breach.

In positing the duty, the court stated in *Klepper* (246 NY, at p 90): "The owner was also under the duty to maintain its building so that snow and ice would not accumulate upon the roof and fall off upon passers-by to their injury."

Applicable to our case the duty was breached by allowing the snow and ice to accumulate upon the ledge overhanging the sidewalk, for a period of at least eight days. There was a danger it might fall. The issue then became one of notice. It is well settled that where a condition continues for some period of time, there is a jury question whether defendant had constructive notice, in short that it knew or should have known of the existence of the condition. It has recently been held that mere photographs of a condition said to be dangerous are sufficient to establish constructive notice if it appears from the pictures that the condition must have existed for a reasonable length of time *(Blake v City of*

*Albany*, 48 NY2d 875; *Taylor v New York City Tr. Auth.*, 48 NY2d 903; see *Batton v Elghanayan*, 43 NY2d 898, 900).

Whenever objects accumulate upon a roof, eaves or a ledge of a building adjoining the public sidewalk, there is a duty upon the part of the owner or operator of the building to take reasonable steps to insure that no object will fall to the street or if need be, to rope off the sidewalk or in some other way to warn pedestrians not to walk on the sidewalk adjoining the building until the condition has been eliminated *(Hughes v Harbor & Suburban Bldg. & Sav. Assn.*, 131 App Div 185). As stated in *Klepper* (246 NY, at p 95) approving the jury's verdict: "the Seymour House Company was guilty of negligence by allowing snow and ice to accumulate on the cornice of the wing of Seymour House and not taking precaution to remove said snow or ice or to erect a barrier to hold said snow or ice on the cornice roof till it melted or was otherwise disposed of."

The superintendent of the adjoining Bank of Montreal Building testified as to his roping off of the sidewalk in front of his building. He further testified that he had not noticed the sidewalk in front of the Bankers Trust Building similarly roped off during the week prior to the accident. There was evidence of a dangerous condition caused by "natural phenomena". The jury was entitled to consider reasonable means of dealing with such phenomena.

The evidence here was sufficient to establish that ice had accumulated on the ledge of Bankers building for a period of eight or more days, and that a chunk of ice fell from Bankers building and struck Taylor. Thus, the proof was sufficient to go to the jury on the issue of defendant Banker's negligence in permitting a dangerous condition to exist with constructive notice of the condition because of the lapse of time since the last snowfall.

The jury's verdict demonstrated that it found for the plaintiffs on both the issue of negligence and the issue of notice. Its verdict should not have been set aside.

Accordingly, the judgment of the Supreme Court, New York County (CAHN, J.), entered on June 17, 1980 vacating the jury's verdict should be reversed, on the law and the facts, the jury's verdict should be reinstated and judg-

ment should be entered in favor of the plaintiffs against Bankers Trust Co. on the issue of liability only, together with costs, and the action remanded for a trial upon the issue of damages.

SULLIVAN, J. P., ROSS, MARKEWICH and SILVERMAN, JJ., concur.

Judgment, Supreme Court, New York County entered on June 17, 1980, reversed on the law and the facts, the jury's verdict reinstated and judgment entered in favor of the plaintiffs against Bankers Trust Co. on the issue of liability only, and the action remanded for a trial upon the issue of liabilty only, and the action remanded for a trial upon issue of damages. Appellants shall recover of respondent Bankers Trust Company $75 costs and disbursements of this appeal.