FOURTH DIVISION 

March 31, 1999 

No. 1-97-4674

LAURI BLOOM,

Plaintiff-Appellant,

v.

BISTRO RESTAURANT LIMITED PARTNERSHIP, an Illinois Limited Partnership; 

CP-IGL, an Illinois General Partnership, AMERICAN INVSCO REALTY, INC., a corporation, and INVSCO MANAGEMENT COMPANY, a corporation,

Defendant-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

Honorable

JENNIFER DUNCAN-

BRICE,

Judge Presiding.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Lauri Bloom, filed this personal injury lawsuit against defendants, American Invsco Realty, Inc. and Invsco Management Company (INVSCO), and Bistro Restaurant Limited Partnership.  Plaintiff alleged in her complaint that she suffered injuries after being struck by falling ice from a building located at 110 East Pearson in Chicago, Illinois, that defendant INVSCO managed and where defendant Bistro's restaurant was located.  Plaintiff appeals from the trial court's grant of summary judgment in favor of defendants.  The sole issue presented on appeal is whether the court improperly granted summary judgment for the defendants.

On January 27, 1994, plaintiff dined at the Bistro with three other people.  The restaurant was located on the main floor of a high-rise building owned and managed by INVSCO.  After the meal, plaintiff waited inside the vestibule while her companion went outside to retrieve their car from the valet.  She exited the restaurant when the car pulled up and stood under the canopy that covers the entrance to the restaurant.  While standing under this canopy, plaintiff was struck on the head and shoulder and knocked to the ground by a slab of ice.  She never saw this ice before she was struck.   When she looked to the ground, she saw that the piece of ice was about a foot long and one to two inches thick.  An ambulance transported her to the hospital, where she was treated for her injuries.

Tim Burke, a waiter at the restaurant, saw plaintiff being struck by the piece of ice as he was serving customers but did not see from where the ice had fallen.   He did not see any ice fall before the incident.   However, he later went outside to try and determine from where the ice had fallen and saw four identical protrusions on the building.   All of the protrusions except one had four-foot-long ice formations on them.   The one protrusion that did not have an ice formation on it was located directly above the restaurant entrance where plaintiff was struck.  

Andrew Smith, the floor manager in the restaurant that night, heard a commotion and went outside, where he saw plaintiff on the ground.  He observed a hole in the awning but saw no other ice falling through it.  

Plaintiff filed a complaint alleging negligence, nuisance and 
res ipsa loquitur 
against Bistro, Inland Property Management, Inc., and North Michigan Avenue Limited Partnership.  Plaintiff voluntarily dismissed Inland and North Michigan.  Plaintiff then filed a first amended complaint which added claims against Mid-

America Management Group, Inc., LaSalle National Trust and CP-

IGL.  LaSalle filed a motion to dismiss the case against it, which the court granted.  

Plaintiff filed a second amended complaint against Bistro, CP-IGL, Mid-America Management Group, Inc., and Mid-America Management Corporation.  

Plaintiff filed a third amended complaint against Bistro, CP-IGL, American Invsco Realty, Inc., and Invsco Management Company.  The third amended complaint alleged the same claims as the original complaint.  INVSCO answered the complaint denying the allegations. 

INVSCO moved for summary judgment on the basis that, because plaintiff's injuries were caused by a natural accumulation of ice, defendant was not liable and owed no duty to plaintiff under Illinois law.  Bistro joined INVSCO in that motion.  

The circuit court denied defendants' motion.  The court found that plaintiff had presented sufficient circumstantial evidence creating a genuine issue of material fact that the falling ice was the proximate cause of her injury.  INVSCO filed a motion to reconsider which was joined by Bistro.  The court granted the motion to reconsider and entered summary judgment in favor of defendants.  In its ruling, the court found that it had failed to consider defendants' argument that "the ice which fell on plaintiff was the result of a natural accumulation of snow and ice." 

Plaintiff filed a motion to reconsider the entry of summary judgment, which was denied.

Plaintiff argues that summary judgment in favor of defendants was in error because the court improperly applied the "natural accumulation rule" and that whether the ice was a natural or unnatural accumulation was a question of fact.  

A trial court should grant summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  
Purtill v. Hess, 
111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986).  Because summary judgment is a drastic remedy, the court should construe the evidence "strictly against the movant and liberally in favor of the opponent."  
Purtill, 
111 Ill. 2d at 240.  In order to withstand a motion for summary judgment, a plaintiff must come forward with sufficient evidentiary materials to permit the trier of fact to find that defendant was responsible for an unnatural accumulation of water, ice or snow that caused plaintiff's injuries.  
Galivan v. Lincolnshire Inn, 
147 Ill. App. 3d 228, 229, 497 N.E.2d 1331 (1986).

A property owner generally owes no duty to its customers to remove snow or ice that accumulates naturally on the premises.  
Wells v. Great Atlantic & Pacific Tea Co., 
171 Ill. App. 3d 1012, 1017, 525 N.E.2d 1127 (1988).

Plaintiff argues that the natural accumulation rule, which is well-settled law in Illinois, only applies to "slip and fall" cases and not to this situation.   Plaintiff cites a New York case, 
Taylor v. Bankers Trust, 
80 A.D.2d 483, 439 N.Y.S. 2d 138 (1981), to support her contention that new law must be applied.  In 
Taylor, 
plaintiff was struck by falling ice from defendant's building.  
Taylor, 
80 A.D.2d at 484, 439 N.Y.S. 2d at 139.  The court found that, pursuant to New York law, whenever objects accumulate upon a roof, eaves or a ledge of a building adjoining a public sidewalk, there is a duty upon the part of the owner or operator of the building to take reasonable steps to ensure that no object will fall into the street.  However, we see no reason to make such a distinction and find that the natural accumulation rule applies to falling ice and snow that forms on a building as well as slip and fall cases.

Defendant is correct that in Illinois a landlord cannot be held liable for injuries incurred resulting from natural accumulations of ice and snow and, consequently, in such cases there is no duty to warn pedestrians.  
Newcomm v. Jul, 
133 Ill. App. 2d 918, 921, 272 N.E.2d 699 (1971).  However, there are exceptions where the accumulation of ice and snow becomes unnatural due to the design and construction of the landlord's building.  The construction and maintenance of the landlord's premises are within his control.  It is not imposing an undue burden on him to require him not to add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises.  
Lapidus v. Hahn, 
115 Ill. App. 3d 795, 450 N.E.2d 824 (1983); 
Erasmus v. Chicago Housing Authority, 
86 Ill. App. 3d 142, 407 N.E.2d 1031 (1980); 
McCann v. Bethesda Hospital, 
80 Ill. App. 3d 544, 400 N.E.2d 16 (1979).

In the instant case, the record raises a factual question on the issues of whether the ice that struck plaintiff as she exited the restaurant raises a factual question as to whether ice formed on a protrusion of the building, and whether the protrusion caused an accumulation of ice when the temperature dropped below a certain level, thereby creating a condition hazardous to pedestrians below.  At the very least, it raises a factual question as to whether these protrusions in and of themselves were defectively designed or whether their mere presence created a hazard, thereby precluding the entry of summary judgment.

Plaintiff argues that there existed a factual question as to whether the ice accumulation was natural or unnatural. In this case, the facts show that the chunk of ice fell from some upper portion of the building and struck plaintiff.  Plaintiff indicated that she did not see exactly from where the ice fell because "it came through the canopy and she was not looking up."    Under Illinois law, for plaintiff to survive summary judgment, she must affirmatively show that the accumulation was somehow created by defendants or that the property owner had actual or constructive knowledge of the condition.  See 
Gilberg v. Toys "R" Us, Inc., 
126 Ill. App. 3d 554, 557, 467 N.E.2d 947 (1984).  Plaintiff has offered some facts that would allow a jury to find that the falling ice was an unnatural accumulation or that the landlord caused the accumulation to develop in an unnatural way.

As to defendant Bistro, it is clear that, while it was not the landowner nor did it possess the section of the building upon which the protrusions were located, it did owe plaintiff a duty to provide a safe means of ingress and egress from its premises.  
McDonald v. Frontier Lanes, Inc., 
1 Ill. App. 3d 345 (1971).  In order to survive summary judgment, plaintiff must present some evidence that Bistro had actual or constructive knowledge of the alleged defect and failed to take a reasonable precaution to avoid injury to its patrons and others.  
Wells v. Great Atlantic & Pacific Tea Co., 
171 Ill. App. 3d 1012, 525 N.E.2d 1127 (1988); 
Clauson v. Lake Forest Improvement Trust, 
1 Ill. App. 3d 1041, 1045, 275 N.E.2d 441, 444 (1971).

The general manager testified during a discovery deposition that, during the 5½ years she was employed at Bistro, she received approximately half a dozen complaints from guests and employees about snow or ice falling at or around the canopy area where this injury occurred.  This testimony does create a question of fact, making entry of summary judgment in favor of Bistro improper.

Based upon the foregoing analysis, it is the judgment of this court that the entry of summary judgment was error, and that judgment is accordingly reversed and remanded to the circuit court.  

Reversed and remanded.

HOFFMAN, J., concurs. 

WOLFSON, J., specially concurs.

JUSTICE WOLFSON, specially concurring:

While I agree with the result reached by the majority, I also believe use of the natural/unnatural accumulation approach in this case is an analytic sidetrack.

While we are bound to analyze slip and fall cases in terms of natural or unnatural accumulation of ice and/or snow (see 
McCann v. Bethesda Hospital, 
80 Ill. App. 3d 544, 548-549, 400 N.E.2d 16 (1979)), I see no reason to do so in this case.

I would apply traditional tort principles -- to prevail, plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately  caused by the breach.  
Ward v. K-mart Corp., 
136 Ill. 2d 132, 140, 554 N.E.2d 223 (1990).

The difficult question here is one of duty.  Whether a duty exists is a question of law.  
Ward, 
136 Il. 2d at 140.  That means we must consider not only the reasonable foreseeability and likelihood of injury, "but also (3) the magnitude of the burden on defendant in guarding against injury and (4) the consequences of placing that burden on defendant."  
LaFever v. Kemlite Co., 
185 Ill. 2d 380, 389, 706 N.E.2d 441 (1998).  Whether a duty exists is an inquiry shaped by public policy.  
LaFefer, 
185 Ill. 2d at 388.

 In the case before us we are given few facts concerning the nature of the protrusions from the building.  We are not told

whether some defect about them created an unreasonable risk of harm to people walking past the building.  Still, there is evidence all the protrusions except one had four foot long ice formations on them.  That, in addition to some evidence the building owner and the restaurant owner had notice of the dangerous condition, persuades me the right result has been reached.