# Illinois Official Reports

## Appellate Court

***Murphy-Hylton v. Lieberman Management Services, Inc.,***
**2015 IL App (1st) 142804**

| | |
|---|---|
| Appellate Court Caption | PAMELA MURPHY-HYLTON, Plaintiff-Appellant, v. LIEBERMAN MANAGEMENT SERVICES, INC., and KLEIN CREEK CONDOMINIUM, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-14-2804 |
| Filed | December 21, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-6147; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael W. Rathsack, of Chicago, for appellant.<br><br>Richard J. Turiello, of Grant & Fanning, of Chicago, for appellees. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Presiding Justice Liu and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1      On the morning of February 18, 2011, plaintiff fell while walking on the sidewalk outside her condominium in Carol Stream. She brought suit against defendants, Lieberman Management Services, Inc. (Lieberman), and Klein Creek Condominium (Klein) (collectively, defendants) alleging that their negligent maintenance of the property created an unnatural accumulation of ice, which caused her fall. The trial court granted defendants' motion for summary judgment, finding that the Snow and Ice Removal Act (Act) (745 ILCS 75/1 *et seq.* (West 2010)) provided immunity for defendants. Plaintiff filed this appeal, whereby the only issue presented is whether the immunity provided by the Act only applies to those who create a danger by negligent efforts to remove natural accumulations of ice and snow or instead applies to anyone whose defective property, whether because of factors such as negligent landscaping design or maintenance, creates an unnatural accumulation of ice or snow which causes injury. For the following reasons, we hold that, as a matter of law, the Act does not apply to plaintiff's negligence suit. Therefore, we reverse.

¶ 2                                      BACKGROUND

¶ 3      On June 13, 2011, plaintiff filed her original complaint against Lieberman, the management company of the property at issue. In subsequent pleadings, she added Klein, the property owner, and Granulawn Land Care,[1] the company responsible for landscaping and snow removal at the property. In their answer to plaintiff's complaint, defendants denied all material allegations against them. Defendants also asserted immunity pursuant to the Act as an affirmative defense. On December 14, 2012, the trial court granted defendants' motion to dismiss counts II and VI of plaintiff's second amended complaint, which alleged willful and wanton conduct by defendants, without prejudice and with leave to refile. Plaintiff never refiled those counts. During the course of discovery, numerous depositions were taken. The testimony from those depositions forms the basis for the following synopsis of the operative facts of this case.

¶ 4      In her deposition, plaintiff testified that on the morning of February 18, 2011, at approximately 8:30 a.m., she left her apartment to go to the department of motor vehicles to renew her license. She stated she walked out the common door of her building, down the sidewalk on the backside of her unit, turned to the left where the sidewalk came to a "T," took about two steps, and fell. She landed on her right knee. She stated that she slipped on a patch of ice about the size of an 8½ by 11 inch piece of paper that she did not see before she fell. She knew that she had slipped on ice because while she was waiting for the paramedics to come, she lay on the ground and could feel that there was ice on the sidewalk. Plaintiff testified that the sidewalk was clear and did not appear to be wet, and there was no salt or other material present. She also stated that there was no snow on the grass adjacent to the sidewalk, recalling that the only snow present at this time was the 3 to 4 foot banks of snow at the ends of the parking lot where snow was piled up, approximately 60 feet from where she fell. On the day of her fall, plaintiff remembered the weather as being "bright and sunny and cold," and she estimated temperatures in the twenties. She testified that there was no precipitation that day

---

[1]Granulawn is not a party to this appeal. It was previously dismissed from the case pursuant to a settlement with plaintiff. Subsequent to the dismissal, the trial court entered a good faith finding.

and that the last time she remembered there being any snowfall was during the "blizzard of 2011," which she thought was a week or so prior to her fall.

¶ 5        Regarding the source of the ice that caused her fall, plaintiff, while looking at a diagram of the area where she fell, testified that "[t]here seem to be areas [on either side of the sidewalk] where water would settle, and it was from the drainage from either [of] the downspout things, and it would kind of accumulate there." She agreed that instead of continuing to drain onto the parking lot, the water would, at times, collect and stay on the sidewalk. She testified that she believed the ice upon which she slipped came from previous draining and freezing, because there was no ice anywhere else. She further acknowledged, however, that this was just one possible explanation for the ice. Plaintiff stated that she had never previously slipped on ice in that area and that she never made any complaints to anyone about ice or lack of salt in that area.

¶ 6        Plaintiff's brother, Michael Melson, testified in his deposition that on the day of plaintiff's fall or the day after, he went to her condominium to pick up her husband. There, he observed that the area where she fell was "puddly, wet" and that there was standing water present as it had warmed up by then. Melson stated that he did not recall if it was still icy, but that it was wet with puddles in certain areas. Melson further testified that he observed ice in that same area on one occasion during the month after plaintiff's fall when he saw plaintiff's husband fall. Melson recalled a time when he slipped on an ice patch and almost fell outside of plaintiff's building. Melson testified that the gutters, which he believed to be approximately 40 feet from the sidewalk where plaintiff fell, were unrelated to the water pooling on the sidewalk. Melson stated that the grade going towards the grass allowed the water to pool on the sidewalk and that it would be better if the grade went away from the grass, towards the parking lot.

¶ 7        Roger McGowan, plaintiff's neighbor at the time of her fall, testified at his deposition that on February 18, 2011, the same morning as plaintiff's fall, he slipped on ice and fell in the same area as plaintiff at approximately 6 a.m. Specifically, he stated, "I had come down the–the part of the sidewalk that is facing the north. I went to turn left to go to my parking space, and right on the corner there is where I slipped and fell." When asked how he knew it was ice that he had slipped on, McGowan answered, "[i]n my job [making deliveries to residences], I've slipped on ice quite a few times, and I know it was ice that I was on. It was a cold morning." McGowan stated that he had noticed ice along the sidewalk in question prior to the morning of his fall. He testified that prior to moving into that condominium complex in 2008, his delivery route included the complex, so he had been there on multiple occasions and previously noticed ice on the sidewalk in various areas. Additionally, he testified that of the times he noticed ice on the sidewalk, there were times when ice formed even if it had not snowed recently. When asked how he explained the presence of ice if not from the sky, McGowan averred, "[i]f you had a day where, let's say, there was maybe some snow or ice [that] fell, if that was closer to the building, if the sun was out that day, which would cause the ice or snow to start melting, and it would run downward toward the sidewalk. And then as the night came and it got cold, that's what would freeze up across the sidewalk." McGowan stated that he had noticed this process occur prior to February 2011. However, he also stated that he did not know where the ice that caused his fall came from. McGowan testified that the drainage problems were obvious because "when the water runs across the walks, it freezes." He further explained that dirt gets dragged down across the sidewalk because the water runs that way. McGowan further testified that he only told his wife about his fall, and that he did not report it to anyone else.

¶ 8     At his deposition, Jeff Graves, the president of the Klein Creek Condominium Association at the time of plaintiff's fall, testified that sometime in the afternoon of February 18, 2011, several hours after plaintiff's fall, he inspected the sidewalk at issue and observed that it was "bone dry." He stated that at the time of his inspection, the temperature was in the forties or fifties and it was sunny. He could not say whether there was ice present at the time of plaintiff's fall. Graves further testified that he was not aware of any pooling on the sidewalks on the back of plaintiff's building in the area at issue, rather, the only water accumulation he was aware of were puddles after it rained.

¶ 9     David Selio, the owner of Granulawn and a resident of the Klein Creek condominium complex, testified in his deposition that Granulawn was hired by Klein to perform snow and ice removal services and landscaping services. For example, Granulawn was contracted to perform landscaping services such as spring/fall cleanup, mowing, fertilizing, weed control, pruning, and tree removal. Granulawn was also responsible for removing snow and ice from the parking lots, sidewalks, and stoops. Selio testified that when two or more inches of snow fell, he would automatically perform snow and ice removal, but for any snow fall less than two inches, he was required to get approval from Klein's board. Selio further testified that February 7, 2011, was the last day prior to plaintiff's fall that Granulawn provided snow removal services. Selio testified that Granulawn also performed drainage work for Klein. Specifically, he testified that in October 2011, he was hired to redirect the downspouts of two buildings, which were not located near the area of plaintiff's fall, because they were draining to the foundations of those buildings and there were concerns about mold and erosion.

¶ 10    April Knourek was employed by Lieberman to be Klein's property manager from 2005 to 2010, which was prior to plaintiff's fall. Regarding drainage issues, she testified in her deposition that there was "just pooling areas like up against the building. It wasn't really even an issue with the sidewalks necessarily from what I remember at that time. There was literally areas of the grass that were just soggy, you know, where there would be a bunch of standing water. But not necessarily–I don't recall anything to do with sidewalks. Because most of these issues were all also on the courtyard sides of the property." She also stated that drainage issues occurred in several parts of the property and acknowledged that "mulch [was] moved away from where it was originally laid because of drainage." Knourek was shown photographs that were taken weeks after plaintiff's fall that showed the sidewalk area in question. She testified that she would describe the water near the sidewalk that was pictured in those photos as puddles that did not require intervention. She further testified that during her years as a property manager for Klein, she was not aware of any drainage or water pooling issues on the sidewalk where plaintiff's fall occurred.

¶ 11    Kyla Mercer was employed by Lieberman as Klein's property manager at the time of plaintiff's fall. At her deposition, she was also shown photographs of the sidewalk area in question taken several weeks after the accident. When asked if it appeared that water had drained off from the grass and collected on the sidewalk, she answered, "[t]o me, this isn't a major pooling issue, no." When pressed, however, she acknowledged that the photos showed some standing water on the sidewalk. Mercer also agreed that the photos showed that there was some runoff of dirt, mud, and water that had gone onto the sidewalk from the grassy area. Mercer further testified that the grassy area next to the sidewalk appeared to be at a higher level than the sidewalk. She also stated that she was not aware of any issues with standing water or ice formation in the area where plaintiff fell.

¶ 12    Defendants filed their motion for summary judgment on February 26, 2014. In their motion, defendants argued that summary judgment was appropriate on four different grounds: (1) the Act applied and provided them with immunity; (2) even if the Act did not apply, summary judgment was proper because plaintiff failed to show that the ice was an unnatural accumulation and defendants did not have a duty to remove natural accumulations of ice because nothing in the record showed that they had either actual or constructive notice of the ice; (3) there was no defect in the property at the time of plaintiff's fall and that they inspected the property regularly; (4) even if the court found against them on the other grounds, summary judgment was still proper because there was no ice present on the day she fell.

¶ 13    On April 21, 2014, plaintiff filed her response to defendants' motion for summary judgment. Plaintiff argued that the Act did not apply to the case at bar pursuant to *Greene v. Wood River Trust*, 2013 IL App (4th) 130036, where the court held that the Act did not apply to negligence actions for injuries caused by defective construction or improper or insufficient maintenance of a premises. *Id.* ¶ 18. Further, plaintiff asserted that she was injured by an unnatural accumulation and defendants had notice of the property defects that created the unnatural accumulation of ice upon which she fell. Finally, plaintiff argued that there was sufficient evidence to show that ice was present on the morning of her fall.

¶ 14    On April 21, 2014, plaintiff also sought leave to file her fourth amended complaint to add allegations that defendants violated the Carol Stream building code. The trial court initially denied plaintiff's motion for leave, but later granted her motion to reconsider and allowed her to file her fourth amended complaint on May 19, 2014. Her fourth amended complaint contained three counts and was the complaint at issue when defendants' motion for summary judgment was granted. Count II was directed against previously dismissed defendant Granulawn; thus, it is not at issue in this appeal. Counts I and III alleged the same acts of negligence against defendants Lieberman and Klein:

> "a. Failed to adequately supervise, maintain and/or make repairs to the premises so as to prevent unnatural accumulations of water, melted snow and/or ice from forming on the sidewalks;
>
> b. Failed to implement a formal system for inspection of the property that would provide adequate notice of unnatural accumulations of water, melted snow and/or ice on the premises;
>
> c. Failed to warn the [p]laintiff of unsafe conditions;
>
> d. Failed to provide a warning sign or runners when it knew or reasonably should have known that unnatural accumulations of ice and water on the sidewalk created an unreasonable risk of harm in winter weather conditions to persons lawfully walking on said premises;
>
> e. Failed to properly direct the drainage of water and melted snow on the premises so as to prevent unnatural accumulations of standing water, melted snow and/or ice from forming on the sidewalk;
>
> f. Failed to correct, modify and/or repair defective sidewalks that resulted in unnatural accumulations of water and/or ice on the sidewalk;
>
> g. Failed to correct, modify, and/or repair downspouts so as to prevent inadequate drainage and the formation of unnatural accumulations of water, melting snow and/or ice on the sidewalks;

h. Maintained a common area that presented an unreasonable danger to the health and safety of the [p]laintiff;

i. Failed to adequately design and/or make safe the means of egress and ingress; and/or

j. Failed to maintain the premises at issue in compliance with sections 302.2, 302.3 and 304.7 of the [b]uilding [c]construction and [m]aintenance codes of Carol Stream, I[llinois]."

¶ 15 Defendants filed their reply in support of their summary judgment motion on May 5, 2014. In their reply, defendants argued that *Greene* did not control and that *Ryan v. Glen Ellyn Raintree Condominium Ass'n*, 2014 IL App (2d) 130682, which was decided more recently than *Greene*, was instructive. Defendants relied on *Ryan* for the proposition that no matter how the patch of ice that caused the plaintiff's fall was formed, defendant's immediate or proximate negligence was in failing to remove that patch of ice despite their general snow and ice removal efforts. *Id.* ¶ 20. Defendants also reiterated their argument that the ice involved in plaintiff's fall, if present, was a natural accumulation that they had no duty to remove.

¶ 16 On July 2, 2014, plaintiff filed a surresponse and addressed defendants' arguments regarding *Ryan*. Plaintiff asserted that the *Ryan* court actually agreed with *Greene* when it held that some allegations involving negligent snow removal or omissions were necessary for immunity under the Act to apply. *Id.* ¶¶ 18-19. Plaintiff therefore contended that because she did not allege negligence based on defendants' snow removal efforts, the Act could not apply here under the reasoning of both *Greene* and *Ryan.* Further, plaintiff argued that even though defendants seem to argue that plaintiff has made this case about snow and ice removal efforts by suing Granulawn, in actuality, plaintiff's claims against Granulawn contained in her fourth amended complaint stemmed from the landscaping services that it provided, not its snow and ice removal services. Additionally, plaintiff asserted that she presented *prima facie* evidence of defendants' negligence based on their alleged building code violations.

¶ 17 Defendants filed their surreply on July 21, 2014, in support of their motion for summary judgment. They argued that plaintiff exceeded the allowable scope of its surresponse and moved to strike her brief.[2] Defendants further contended that plaintiff attempted to assert there was a defect at the property in question without producing any admissible evidence. Defendants argued there was no evidence of building code violations at the condominium complex. They also reiterated that the Act afforded them immunity.

¶ 18 On August 14, 2014, the trial court orally delivered its ruling granting defendants' motion and entered a judgment order in favor of defendants. The court began by acknowledging that "plaintiff went to great pains to plead this not as an issue related to negligent shoveling or removal of snow and ice but *** [as an] unnatural accumulation coming from something other than the shoveling itself." The court also noted that plaintiff could not identify the source of the ice upon which she fell. It also pointed out that there had been "quite a bit of snow relatively soon in the recent past prior to [the date of plaintiff's fall]," and there was no question that defendants had hired Granulawn to perform snow and ice removal. Thus, the trial court initially stated that "the issue essentially is where did the unnatural accumulation come from and what was it related to." It then went on to note that a weather report that was submitted by defendants was not particularly useful because it only provided data from O'Hare International

---

[2]The trial court denied defendants' motion to strike plaintiff's surresponse on August 7, 2014.

Airport and not the location in question. The court recognized that plaintiff testified that maybe the water that formed the ice came from the downspouts, but neither party had presented any expert testimony regarding the water's source.

¶ 19 Then, the court determined that the issue in this case is a legal one regarding the scope of the Act. First, the court acknowledged that under Illinois law, there is no duty to remove natural accumulations of snow, but there are duties to remove unnatural accumulations, like the one that had been claimed in this case. The court stated that the legislature enacted the Act "as a means to encourage the cleaning of sidewalks for the safe passage of pedestrians." Basically, the Act was intended to encourage people to shovel their sidewalks without the fear of litigation if their negligence caused someone to fall and sustain injury. The court recognized that both parties focused on the scope of the Act as being the primary issue in this case.

¶ 20 The court then analyzed *Greene* and *Ryan*, the two cases relied upon by plaintiff and defendants. The court first addressed *Greene*, stating that it was "wrongly decided for errors which occur quite frequently *** both by practitioners and by [c]ourts when dealing with issues of duty and immunity." The court further stated that it found *Greene* unconvincing because the Act does not make a distinction between the immunity provided for failure to shovel as opposed to other scenarios. Specifically, the court explained that "immunities don't focus on causation. Immunities focus on providing an incentive so that, number one, entities aren't forced into bankruptcy for being constantly sued and for constantly losing. But also to provide an incentive to do something that's beneficial for society, in this case to shovel sidewalks."

¶ 21 The trial court further determined that there is nothing in section 1 or section 2 of the Act that relates to causation. 745 ILCS 75/1, 2 (West 2010). The court found that the Act does not state that it applies only to negligent shoveling rather than an unnatural accumulation from a building defect, or other cause. The court stated that the Act is broader than the *Greene* court determined it to be and that the *Greene* court improperly read exceptions into the Act. As a result, the trial court aligned itself with the decision in *Ryan* and determined that the Act could not be read to include immunity only when negligent snow or ice removal was at issue. The trial court acknowledged there was a split amongst the divisions and opted to follow *Ryan*. Finally, the court granted the motion for summary judgment and dismissed the case with prejudice.

¶ 22 Plaintiff timely filed her notice of appeal on September 12, 2014.

¶ 23                                  ANALYSIS

¶ 24 On appeal, plaintiff challenges the trial court's ruling in favor of defendants on their motion for summary judgment. Plaintiff argues that the Act does not apply to instances where the ice causing the fall was an unnatural accumulation unrelated to any snow removal effort. Plaintiff asserts that the ice that caused her fall was the result of negligent maintenance or construction of the premises at issue; thus, defendants are not immune under the Act. Before we address plaintiff's arguments, we note that a motion for summary judgment shall be granted if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). While the summary judgment procedure is an important tool in the prompt administration of justice, it is a drastic measure and should only be granted where the movant's right is so clear as to be free from doubt. *Olson*

*v. Etheridge*, 177 Ill. 2d 396, 404 (1997). In reviewing a trial court order granting summary judgment, our review is *de novo*. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Further, we review *de novo* the interpretation of a statute as a question of law. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008).

¶ 25 We also provide an overview of the Act and relevant decisions that have interpreted it. According to section 1 of the Act, the legislature enacted this statute to encourage people to clean the sidewalks abutting their residences. 745 ILCS 75/1 (West 2010). Outside of wrongful acts, or willful and wanton conduct, the legislature stated it would be "undesirable" to find those who undertake snow removal efforts to be found liable due to their efforts. *Id.* The Act states:

> "§ 1. It is declared to be the public policy of this State that owners and others residing in residential units be encouraged to clean the sidewalks abutting their residences of snow and ice. The General Assembly, therefore, determines that it is undesirable for any person to be found liable for damages due to his or her efforts in the removal of snow or ice from such sidewalks, except for acts which amount to clear wrongdoing, as described in Section 2 of this Act." *Id.*

> "§ 2. Any owner, lessor, occupant or other person in charge of any residential property, or any agent of or other person engaged by any such party, who removes or attempts to remove snow or ice from sidewalks abutting the property shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton." 745 ILCS 75/2 (West 2010).

¶ 26 Prior to interpreting the Act and its intended scope, we look to its historical context. Under Illinois common law, the general rule is that there is no duty for a landowner to remove natural accumulations of ice or snow from common areas under his control; thus, the landowner cannot be held liable for injuries resulting from a natural accumulation. *Webb v. Morgan*, 176 Ill. App. 3d 378, 382 (1988). Exceptions have been made where some other act of negligence creates the condition of the premises. *Id.* For example, a duty may arise that requires that a landowner exercise ordinary care when undertaking the removal of ice and snow. *Id.* "His duty is to prevent an unnatural accumulation on his property, whether that accumulation is the direct result of the owner's clearing of the ice and snow, or is caused by design deficiencies that promote unnatural accumulations of ice and snow." *Id.* at 382-83. Under the common law, in addition to snow and ice removal efforts, "an exception to the common law 'no duty' rule is made where 'the accumulation of ice or snow becomes unnatural due to the design and construction of the premises.' [Citation.] 'The construction and maintenance of a landowner's property are matters within the landowner's control. [Citation.] Therefore, Illinois courts have noted that "[i]t is not imposing an undue burden on [the landowner] to require him not to add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises." ' " *Greene*, 2013 IL App (4th) 130036, ¶ 15 (quoting *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 233-34 (2004), quoting *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711 (1999)).

¶ 27 The Act was passed in derogation of the common law. *Id.* ¶ 16 (" 'The Act is in derogation of this common law in that it provides immunity for injuries sustained by a person as a result of the attempted clearing of sidewalks abutting the property.' " (quoting *Gallagher v. Union*

*Square Condominium Homeowner's Ass'n*, 397 Ill. App. 3d 1037, 1043 (2010))). " '[A] court cannot construe a statute in derogation of the common law beyond what the words of the statute expresses [*sic*] or beyond what is necessarily implied from what is expressed.' " *Id.* (quoting *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004)). " 'Any legislative intent to abrogate the common law must be clearly and plainly expressed, and we will not presume from ambiguous language an intent to abrogate the common law.' " *Id.* (quoting *Heider v. Knautz*, 396 Ill. App. 3d 553, 561 (2009)).

¶ 28        In this case, the trial court examined, and the parties primarily relied on, two cases: *Greene*, 2013 IL App (4th) 130036, and *Ryan*, 2014 IL App (2d) 130682, which were decided by the Fourth District and the Second District, respectively, six months apart from one another. While the decisions of our sister courts are not binding (*In re Marriage of Dann*, 2012 IL App (2d) 100343, ¶ 83), we acknowledge that these purportedly divergent opinions by our colleagues have created the appearance of a split within the Illinois Appellate Court. However, as set forth in further detail below, unlike the trial court, we do not view these two cases as being as staunchly opposed to one another on an important issue in the instant appeal. Instead, we believe that when examined together, *Greene* and *Ryan* both reach the same conclusion, namely, that allegations of negligence in a defendant's snow and ice removal efforts are required in order to trigger immunity under the Act.

¶ 29        In *Greene*, the plaintiff brought a negligence suit alleging that she slipped and fell near the entrance of a residence that she leased from defendants due to its icy condition. *Greene*, 2013 IL App (4th) 130036, ¶ 4. The plaintiff alleged many theories of negligence, none of which were based on negligent snow or ice removal efforts. *Id.* Rather, the plaintiff claimed that the ice resulted from the defendants' defective or improperly maintained roof, gutters, and downspout. *Id.* The defendants filed a motion to dismiss pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)), arguing that the defendants were immune from liability under the Act. *Greene*, 2013 IL App (4th) 130036, ¶ 5. The trial court granted the defendants' motion. *Id.* On appeal, the plaintiff argued that the trial court erred because the Act does not apply where the unnatural accumulation of ice was caused by defective construction or inadequate maintenance of the subject property rather than snow and ice removal efforts. *Id.* ¶ 10.

¶ 30        The court ultimately found in favor of the plaintiff and held that "the plain language of the Act does not provide immunity for injuries if the unnatural accumulation of ice was caused by defective construction or improper or insufficient maintenance of the premises, and not by snow and ice removal efforts." *Id.* ¶ 23. The *Greene* court began its analysis by recognizing that because the Act provides owners, lessors, occupants, or other persons in charge of residential property immunity for injuries caused by snow and ice removal, the legislature created a direct conflict with common law negligence claims, which, conversely, allowed liability to be imposed upon those same persons for negligent snow or ice removal efforts. *Id.* ¶ 17. The court further emphasized that the plaintiff alleged that her injuries were caused by a defective condition of the building adjacent to the sidewalk, not negligent snow or ice removal efforts. *Id.* ¶ 18. As a result, the court found that the plain language of the Act did not apply to her case, specifically ruling, "[t]he plain language of the Act indicates it does not apply to negligence actions for injuries caused by defective construction or improper or insufficient maintenance of the premises. Instead, the Act only applies to immunize an owner's negligent efforts to remove snow and ice from residential sidewalks." *Id.* The *Greene* court explained

that if it were to find immunity under the Act based on defective premises construction or maintenance, then it would be overturning a common law remedy, which is not favorable. *Id.* ¶ 19 (citing *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 634 (2007)).

¶ 31 Further, the *Greene* court examined the First District case of *Pikovsky v. 8440-8460 North Skokie Boulevard Condominium Ass'n*, 2011 IL App (1st) 103742. *Greene*, 2013 IL App (4th) 130036, ¶ 20. In *Pikovsky*, the plaintiff was injured when she fell on icy snow mounds that were created by snow that was plowed from the parking lot onto the rear entrance sidewalk. *Pikovsky*, 2011 IL App (1st) 103742, ¶ 4. The defendants contracted for snow removal, which included a parking lot and sidewalk, but not the rear entrance sidewalk. *Id.* ¶ 3. On appeal, the court found that the defendants' failure to clear the snow and ice from the rear entrance sidewalk was an omission in their overall snow removal efforts that was protected by the Act. *Id.* Comparing the *Pikovsky* case to the case before it, the *Greene* court noted that *Pikovsky* was "factually dissimilar to the present case as the unnatural accumulation of snow and ice in *Pikovsky* was allegedly due to the defendants' snow and ice removal efforts. Such allegations of snow removal efforts are notably absent here." *Greene*, 2013 IL App (4th) 130036, ¶ 21. The *Greene* court stated "to the extent *Pikovsky* holds that an owner's contracting for snow and ice removal equates to snow and ice removal efforts under the Act, we decline to adopt this holding." *Id.* The court recognized, "[w]ere we to hold that the Act also applied where an unnatural accumulation of ice was caused by defective construction or improper or insufficient maintenance of the premises, we would be repealing a common law remedy by implication, which is not favored. *Id.* ¶ 19. Ultimately, the *Greene* court concluded that "the plain language of the Act does not provide immunity for injuries if the unnatural accumulation of ice was caused by defective construction or improper or insufficient maintenance of the premises, and not snow and ice removal efforts." *Id.*

¶ 32 In *Ryan*, the plaintiff brought a negligence suit against the defendants alleging that she slipped on a patch of ice that had formed because of water dripping from an awning. *Ryan*, 2014 IL App (2d) 130682, ¶ 3. Contrary to the plaintiff in *Greene* who only alleged negligence based on defective construction or maintenance, the plaintiff in *Ryan* alleged that the defendants had failed to correct a design flaw in the awning *and* voluntarily undertook to remove snow and ice but failed to clear the patch upon which she slipped. *Id.* The defendants moved for summary judgment, arguing that the plaintiff's suit was barred by the Act, and the trial court granted their motion. *Id.* ¶ 4. On appeal, the plaintiff asserted that the Act did not apply because her claim was based on an architectural feature of defendants' premises, not their snow removal efforts. *Id*. ¶ 5.

¶ 33 Like *Greene*, the *Ryan* court first examined what the common law holds. *Id.* ¶ 12. The *Ryan* court noted that the case of *Webb v. Morgan*, 176 Ill. App. 3d 378, 382-83 (1988) accurately reflected the common law. In *Webb*, the court acknowledged that under the common law, a landowner's duty was to prevent an unnatural accumulation on his property, whether that accumulation is a result of: (1) snow and ice removal efforts or (2) a design deficiency that promotes unnatural accumulations of ice and snow. *Id.* In *Ryan*, the plaintiff argued that the Act only applied to "theory (1)." *Ryan*, 2014 IL App (2d) 130682, ¶ 11. The *Ryan* court set forth its own interpretation of the common law when it stated, "theory (2) *** presupposes more immediate negligence." *Id.* ¶ 12. It further expounded on the concept of "immediate negligence" when it stated,

- 10 -

"[l]iability under theory (2) is based on a design or construction defect coupled with passivity by the owner-specifically, nonexistent or ineffective efforts at removing the accumulation resulting from the defect. Thus, the basis for liability always assumes (barring a reason for strict liability) the more immediate negligence consisting of the defendant's failure to clear the particular unnatural accumulation of snow or ice that led to the plaintiff's injury. After all, an owner of property with myriad defects that promote unnatural accumulations of snow or ice can avoid liability as long as the owner clears or neutralizes such accumulations before they cause injury." *Id.*

¶ 34     The *Ryan* court next examined the language of the Act and found the legislature's intent to be clear. *Id.* ¶ 15. The court cited section 2 of the Act (745 ILCS 75/2 (West 2012)), which eliminates liability for " 'acts *or* omissions' " in snow removal efforts and stated that an example of an omission would be "a property owner's failure to clear ice formed by water dripping from a defective roof." (Emphasis in original.) *Ryan*, 2014 IL App (2d) 130682, ¶ 15 (quoting 745 ILCS 75/2 (West 2012)). The *Ryan* court further stated that "[a] property owner who remains entirely inactive in the face of a snow or ice accumulation cannot avail himself of the Act for an injury caused by that accumulation." *Id.* Additionally, the court found that section 2 of the Act (745 ILCS 75/2 (West 2012)) does not expressly state or imply an intent to exclude unnatural accumulations that did not result from a property owner's positive efforts at snow and ice removal; therefore, the plaintiff's interpretation was contrary to the general prohibition against reading exceptions into a statute. *Ryan*, 2014 IL App (2d) 130682, ¶ 16.

¶ 35     The *Ryan* court emphasized that, based on its analysis, it rejected plaintiff's statutory interpretation that the defendants' snow removal efforts were immaterial because they did not create the unnatural accumulation and further noted that "plaintiff's allegations of defendants' snow and ice removal efforts bring this case within the scope of the Act as we have interpreted it." *Id.* ¶ 20. The court concluded that "[a]s plaintiff attributes her fall to the consequences of defendants' failed snow and ice removal efforts, the Act has *prima facie* application to her claim." *Id.*

¶ 36     In this case, the trial court agreed with the holding in *Ryan*, rather than *Greene.* Specifically, it found that the *Greene* decision was "wrongly decided" based on its analysis of the issues of duty and immunity. The trial court stated that the *Greene* decision became problematic when it addressed the issues of duty and immunity together because the Illinois Supreme Court has made it clear that they are two separate inquiries. Further, the trial court determined that it was erroneous for the *Greene* court to make a distinction between immunity provided for snow and ice that occurs as a result of negligent shoveling versus an unnatural accumulation that occurs as a result of something else, such as a landscaping defect. The trial court stated that plaintiff's position "fails to recognize the breath [*sic*] of the immunity that's provided by the legislature."

¶ 37     On appeal, plaintiff argues that the Act provides immunity only for injuries resulting from unnatural accumulations created during efforts to remove ice and snow. She points to the language of section 1 of the Act that expressly states that "it is undesirable for any person to be found liable for damages due to *his or her efforts* in the removal of snow or ice from such sidewalks." (Emphasis added.) 745 ILCS 75/1 (West 2010). Plaintiff also cites section 2 of the Act that states that an owner will not be held liable for injuries "caused by the snowy or icy condition of the sidewalk resulting from *his or her acts or omissions*." (Emphasis added.) 745 ILCS 75/2 (West 2010). Plaintiff asserts that the legislature intended for the phrase "his or her

acts or omissions" to refer to efforts *in clearing the sidewalk*. Plaintiff argues that, contrary to defendants' contentions, the Act does not provide immunity because there is no evidence that defendants undertook actual efforts to remove the ice upon which plaintiff fell. There is evidence that defendants removed snow 11 days prior to plaintiff's fall; however, plaintiff argues that the evidence also shows that the ice at issue was formed after those efforts when melting snow was funneled onto the sidewalk due to defendants' negligent maintenance or design of the premises. Further, plaintiff stresses that *Greene* was correctly decided. She argues that the *Ryan* decision, wherein the court adopted for the first time the legal concept of "immediate negligence" (*Ryan*, 2014 IL App (2d) 130682, ¶ 12), failed to appreciate that the negligence at issue was defendants' conduct in allowing their property's condition to cause ice to form, not their negligence in failing to remove a natural accumulation or their negligence in creating an unnatural accumulation in the course of attempting to remove a natural accumulation of ice or snow. Plaintiff also criticizes the *Ryan* decision by asserting that a contract for snow removal is irrelevant to the real issue of whether there was *actual* effort at snow removal. Plaintiff contends that the intent of the legislature surely could not have been to provide immunity to all who enter into contracts for snow removal regardless of whether any actual effort had been made to remove the snow or ice at issue.

¶ 38    Defendants argue that the trial court correctly applied the Act to bar plaintiff's claims. Defendants assert that this case is inherently about snow and ice removal efforts and plaintiff's failure to make allegations that reflect this is merely her attempt to circumvent the Act. Defendants specifically argue that immunity under the Act is unaffected by any alleged defect in the property and that even if the alleged defects were at issue, plaintiff has failed to present expert testimony to support her case. Defendants emphasize that *Greene* was wrongly decided and *Ryan* should control. Finally, defendants argue that plaintiff has failed to address their alternative, meritorious grounds for summary judgment, namely that plaintiff cannot establish the requisite element of duty. Defendants also maintain that ice was not present on the date of plaintiff's fall.

¶ 39    In this appeal, the sole dispositive issue is the scope of the immunity provided under the Act. Consistent with the *Greene* decision and contrary to the trial court, we find that the Act does not apply to cases where the plaintiff's complaint is silent as to negligent snow removal efforts but rather is grounded in allegations that defendants negligently maintained or constructed their premises. *Greene*, 2013 IL App (4th) 130036, ¶ 18. In this case, plaintiff has made it clear that she is not alleging negligent snow or ice removal by defendants via either their acts or omissions. Thus, there is nothing within plaintiff's complaint to bring this case within the scope of the Act. We consider the fact that plaintiff has made no allegations regarding negligent snow or ice removal efforts, whether through acts or omissions, to be dispositive of the issue of the Act's applicability to this case. We find that the Act does not provide immunity to defendants here for the simple reason that plaintiff's complaint does not contain any allegations of negligence relating to snow or ice removal efforts. As stated earlier in our ruling, we do not find *Greene* and *Ryan* to be dissimilar on this specific issue. In *Greene*, the Act did not apply where the plaintiff made no allegations regarding negligent snow or ice removal. *Id.* ¶ 21. In *Ryan*, the plaintiff's complaint contained allegations of negligent snow and ice removal and the court found said allegations brought her case within the scope of the Act. *Ryan*, 2014 IL App (2d) 130682, ¶ 20. Therefore, on the issue of the Act's applicability when looked at in conjunction with a complaint's allegations, the decisions of those two courts

are complementary, not contradictory. Below we set forth our determination of where the decisions diverge, and the reasons why we disagree with the *Ryan* court.

¶ 40    The primary rule of statutory construction is to give effect to the legislature's intent. *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002). The best evidence of legislative intent is the language used in the statute itself and that language must be given its plain and ordinary meaning. *Id.* Where the statutory language is clear and unambiguous, we must apply the statute without further aids of statutory construction. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996).

¶ 41    In both the *Greene* and *Ryan* cases, although they reached different outcomes, the courts curiously determined that the language of the Act was unambiguous. We find the *Greene* court's interpretation of the Act to be convincing and well-reasoned and adopt it here. The *Greene* court held that the plain language of the Act does not provide immunity for injuries if the unnatural accumulation was caused by defective construction or improper maintenance, rather than snow and ice removal efforts. *Greene*, 2013 IL App (4th) 130036, ¶ 19. The Act notes that our state's public policy is to encourage residential property owners to clean the ice and snow from the sidewalks abutting their residences. 745 ILCS 75/1 (West 2010). This is a clear, concise statement of the conduct, *i.e.*, the removal of ice and snow, that the Act intends to promote. Further, the Act states that the legislature determined that it would be "undesirable" for people to be held liable for their snow and ice removal efforts unless there was willful or wanton conduct. *Id.* This shows that the legislature, contrary to the common law rule, intended that people be able to undertake snow and ice removal efforts without the worry of being subject to litigation if such efforts were done in a negligent manner. As a result, section 2 of the Act reads that any person in charge of any residential property or their agent "who removes or attempts to remove snow or ice from sidewalks abutting the property shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton." 745 ILCS 75/2 (West 2010). Like the *Greene* court, we find that the language of the Act requires that the snow or ice that causes a plaintiff's injuries must be the result of the acts or omissions in defendants' actual snow removal efforts.

¶ 42    We disagree with the *Ryan* decision for numerous reasons. First, we question *Ryan*'s use of the term "immediate negligence" because we can find no basis in Illinois law for such a concept. *Ryan*, 2014 IL App (2d) 130682, ¶ 12. In *Ryan*, the court parsed the defendants' negligence into two parts, one based on negligent design of the premises and the other, which it called "immediate negligence," based on its failure to clear the unnatural accumulation upon which the plaintiff fell. *Id.* The court reasoned that an owner whose defective property caused an unnatural accumulation could always avoid liability "as long as the owner clears or neutralizes accumulations before they cause injury." *Id.* However, we do not find this proposition to be sound logic or consistent with the legislature's intent. The *Ryan* court's reasoning presupposes that when an owner's negligence that is unrelated to snow removal efforts causes an unnatural accumulation, the owner can be shielded from liability if he or she clears the unnatural accumulation. The Act makes no mention of protecting any type of negligence outside of the ordinary negligence that results in an unnatural accumulation after snow removal efforts. We find it contrary to the spirit of the Act to assume that it was intended to protect property owners who negligently maintain, construct, or design their premises. To reach a different conclusion is to read into the Act language that is not expressly stated and that

- 13 -

we are prohibited from doing when a statute, such as the Act, was established in derogation of the common law. *Greene*, 2013 IL App (4th) 130036, ¶ 16 (quoting *Heider*, 396 Ill. App. 3d at 561).

¶ 43 Next, we disagree with *Ryan*'s blurred discussion of the *Greene* and *Pikovsky* cases. We believe that the court in *Ryan* conducted an unclear and seemingly unnecessary analysis regarding the role a contract for snow removal services plays when determining whether there is snow or ice removal effort sufficient to bring a case within the Act. *Ryan*, 2014 IL App (2d) 130682, ¶ 19. In *Ryan*, the plaintiff's complaint contained allegations that the defendants' negligent snow and ice removal efforts were a cause of her injuries. *Id.* ¶ 20. This fact, standing alone, should have been enough for the *Ryan* court to determine that the Act applied to bar plaintiff's claims. However, the court did not stop its analysis there. The *Ryan* court went on to state that it disagreed with *Greene*'s "conclusion that a contract for snow and ice removal does not constitute removal efforts under the Act." *Id.* ¶ 19. Upon a careful reading of the *Greene* case, we do not believe that *Greene* reached such a "conclusion." Rather, the court's decision in *Greene* merely stated that "to the extent *Pikovsky* holds that an owner's contracting for snow and ice removal equates to snow and ice removal efforts under the Act, we decline to adopt this holding." *Greene*, 2013 IL App (4th) 130036, ¶ 21. Thus, the *Greene* court does not render a definite holding or conclusion regarding the role a contract for snow removal plays.

¶ 44 Further, the holding in *Pikovsky* cannot be read to suggest that a contract for snow removal services somehow satisfies the Act as *prima facie* evidence of an effort to remove snow and ice. In *Pikovsky*, the defendants were contracted to clear snow from the sidewalk and the parking lot, but not the rear entrance sidewalk upon which the plaintiff fell. *Pikovsky*, 2011 IL App (1st) 103742, ¶ 13. The court there found that the defendants performed their contractual snow removal duties and were, therefore, making a "conscious effort to clear snow and ice from their premises in order the make the building more accessible for residents and invitees." *Id.* Ultimately, the court found that the defendants' failure to remove the ice and snow from the rear entrance sidewalk amounted to "an omission in their overall snow removal efforts." *Id.* We do not believe this holding by the *Pikovsky* court suggests that their decision hinged upon the fact that a contract for snow removal services existed. Rather, it is clear that the decision in *Pikovsky* was based upon evidence of the defendants' actual snow removal efforts in other areas of the property and their omission of a specific area, rather than the fact that a contract for snow removal existed. Nothing in the *Pikovsky* decision suggests that a contract for snow removal services alone constitutes removal efforts under the Act; thus, we believe it was erroneous for the *Ryan* court to make such a suggestion. We find the *Ryan* court's suggestion that merely contracting for snow or ice removal services satisfies the Act to be inconsistent with the Act's language and intent. The plain language of the Act states that the legislature intended people to be "encouraged to *clean* the sidewalks abutting their residences of snow and ice." (Emphasis added.) 745 ILCS 75/1 (West 2010). The legislature did not intend to encourage people to merely contract for the cleaning of sidewalks. Although the legislature does not define the word "clean," it is far more reasonable to deduce that the legislature intended immunity to apply to one who engages in proactive, actual conduct as opposed to one who passively enters into a contract for snow or ice removal services.

¶ 45 As a final matter, although defendants assert that their alternative grounds for summary judgment are meritorious, that issue is not before this court. There is nothing in the decision of the trial court which evidences a ruling on defendants' alternative grounds. The trial court's

ruling and plaintiff's opening brief only addressed the court's order granting defendants' motion for summary judgment, which was granted "for reasons stated on the record." Our review of the record indicates that the trial court based its decision solely on the issue of immunity under the Act. As such, we confine our decision to the basis of the motion actually considered and ruled upon by the trial court.

¶ 46                                    CONCLUSION

¶ 47       Based on the foregoing, we reverse the trial court's order granting summary judgment, vacate the judgment entered pursuant thereto, and remand for further proceedings.

¶ 48       Reversed and remanded.